UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------x
LINDA HAWKINS,                      :
                                    :
          Plaintiff,                :
                                    :
v.                                  :    Civil No. 12cv319 (AWT)
                                    :
TARGET CORPORATION,                 :
                                    :
     Defendant/Third-Party          :
              Plaintiff,            :
                                    :
v.                                  :
                                    :
BARRETTA ENTERPRISES, LLC,          :
                                    :
          Third-Party Defendant.    :
------------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Third-party plaintiff Target Corporation ("Target") brings a contractual indemnification claim and a common law indemnification claim against third-party defendant Barretta Enterprises, LLC ("Barretta"). Barretta moves for summary judgment on these claims. For the reasons set forth below, Barretta's motion is being granted in part and denied in part.

**I.   Factual Background**

On January 22, 2011, plaintiff Linda Hawkins slipped and fell on a frozen walkway at a Target store in Orange, Connecticut. The plaintiff has alleged that her slip and fall was caused by Target's negligence, inter alia, negligently permitting the walkway to "remain in a dangerous and unsafe

1

condition due to accumulation of ice" and negligently maintaining or placing a drain pipe. (Complaint, Doc. No. 1-1, ¶¶ 5, a, g-h.) At the time of the accident, Target had contracted with U.S. Maintenance, Inc. ("USM") to provide snow and ice removal services at the store. USM, in turn, asked its subcontractor Barretta to provide such services there.

As explained by USM's supervisor for snow and exterior services, William Farmer, USM's relationship with its subcontractors is governed by three documents: "there's the initial contract that they signed . . . to do work with USM. Then there's the specs they would sign for the specific account that they are servicing. And then it's the exhibit that has their payment amount." (Target's Memorandum of Law in Opposition ("Mem. of Law in Opp."), Ex. D, Doc. No. 64-4, ("Farmer Dep."), at 17:12-18.) "[The] exhibit . . . provides details of service for a particular location[.]" (Id. at 67:14-16.)

USM and Barretta entered into a Subcontractor Agreement in January 2010.[1] The agreement provides, in pertinent part, as follows:

> 1. <u>Services</u>: We will set forth in the specifications and pricing on one or more schedules to this Agreement, which you must sign and return prior to commencing any

---

[1] Barretta's signature on the Subcontractor Agreement does not include the day in January 2010 when it signed the agreement, but the fax line at the top of the document indicates the document was sent to USM by Barretta on January 27, 2010.

Services.

2.  Independent Contractor Indemnification:

   A. Independent Contractor. In the performance of the Services hereunder, you shall be and act as an independent contractor. . . .

   B. Defense and Indemnification. You shall, at your own cost and expense, defend us and our customer . . . from and against all allegations (even if such allegations may be later proven false, fraudulent or groundless) asserted in any and all claims reasonably related to Services you provided or failed to provide under this Agreement, regardless of whether your indemnity obligations, specified below, ultimately apply . . . .

   To the fullest extent permitted by applicable law, you shall indemnify and hold harmless the Indemnified Parties from and against any and all liabilities, obligations, claims, demands, causes of action, losses, expenses . . . including, without limitation, costs and expenses whatsoever . . . arising out of . . . (1) Your performance of (or failure to perform) your duties under this Agreement[.]

. . . .

11. Termination or Cancellation: This Agreement or any schedule to this Agreement may be terminated by either party for any reason upon seven (7) days prior written notice by the terminating party delivered to the non-terminating party.

. . . .

12. Arbitration; Waiver of Jury Trial and Punitive Damages; Governing Law and Jurisdiction:

. . . .

   B. Governing Law and Jurisdiction. THE LAWS OF THE STATE OF PENNSYLVANIA SHALL GOVERN THE VALIDITY, PERFORMANCE, INTERPRETATION, AND EFFECT OF THIS AGREEMENT.

3

(Mem. of Law in Opp., Ex. C, Doc. No. 64-3 ("Subcontractor Agreement"), at 1, 5.)  From January 18, 2011 through February 1, 2011, prior to signing the specs and the exhibit for the Target store, Barretta agreed to provide emergency snow and ice removal services for the store, namely to scrape the site down to blacktop and to salt it, and USM agreed to pay Barretta per service as opposed to on a monthly basis.  After February 1, 2011, with the specs and the exhibit signed, USM hired Barretta full time to provide snow and ice removal services for the store, and USM paid Barretta on a monthly basis for its services.

On the day of the slip and fall, January 22, 2011, USM's records show that it was not contacted by Target to service the store.  However, USM's records show that on January 21 around 9:58 p.m., a USM representative spoke with Barretta and was told that Barretta "would have a crew [at the Target store] to take care of everything."  (Farmer Dep., at 74:23-24.)  Farmer explains that Barretta was expected to be "in charge of monitoring the site for safety conditions" (id. at 75:9-10) because by the time USM would call Barretta for service, "it's usually already too late. . . . [Barretta] should go out and check that site."  (Id. at 75:14.)  For example, USM's records show that it did not contact Barretta on January 20 to service the Target store, but Barretta "went out and salted it."  (Id. at 75:20.)

4

**II.  Legal Standard**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477

5

U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  However, the inferences drawn in favor of the nonmovant must be supported by evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  Stern v. Trustees of Columbia University, 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  Anderson, 477 U.S. at 252.

**III. Discussion**

   *A.   Contractual Indemnification*

Barretta asserts that it does not have a duty to indemnify Target because "Target cannot establish that any service provided to Target on January 22, 2011 was provided pursuant to the Agreement." (Memorandum of Law in Support of Motion for Summary Judgment, Doc. No. 61 ("Mem. of Law in Supp."), at 21.) The crux of Barretta's assertion is that it did not sign the specs and the exhibit with USM until February 1, 2011, and therefore, only services provided on or after February 1, 2011 are services governed by the Subcontractor Agreement.

   "Where contract language is clear and unambiguous, the court shall interpret the agreement as expressed, rather than silently intended." Cnty. of Delaware v. J.P. Mascaro & Sons, Inc., 830 A.2d 587, 591 (Pa. 2003). "Indemnity agreements are to be narrowly interpreted in light of the parties' intentions as evidenced by the entire contract." Consolidated Rail Corp. v. Delaware River Port Auth., 880 A.2d 628, 632 (Pa. Super. 2003). "In interpreting the scope of an indemnification clause, the court must consider the four corners of the agreement and its surrounding circumstances." Cnty. of Delaware, 830 A.2d at 591.

   Under the "Services" section of the agreement, USM "will set forth the specifications and pricing on one or more schedules to this Agreement, which [Barretta] must sign and

7

return prior to commencing any Services." (Subcontractor Agreement, at 1.) Under the indemnification provision, Barretta "shall . . . defend [USM and USM's customers] . . . from and against all allegations . . . asserted in any and all claims reasonably related to Services [Barretta] provided or failed to provide under this Agreement[.]" (Id. at 4.) Under the express terms of the agreement, "Services" that fall under the agreement are those set forth in the specifications, and Barretta's duty to indemnify USM and its customer Target arises only with respect to "Services" in the specifications that Barretta signed and returned to USM. It is undisputed that Barretta did not sign the specifications and the exhibit for the Target store until February 1, 2011. Therefore, Barretta has no duty to indemnify Target for services rendered prior to February 1, 2011, and summary judgment is being granted in favor of Barretta with respect to Target's contractual indemnification claim.

Target contends that summary judgment with respect to the contractual indemnification claim should be denied because the Subcontractor Agreement contemplates that a subcontractor's services performed without signing a specification would still be covered by the agreement and that genuine issues of material fact exist as to whether the Subcontractor Agreement was in effect on January 22, 2011 and whether Barretta provided services to the Target store on January 22, 2011. However,

Target's contention rests upon a silent intention that "Services" as used in the agreement covers both services set forth in the specifications and the exhibit and any other services orally agreed to by USM and a subcontractor. This interpretation contradicts the express language of the agreement.

In addition, the issue is not whether the Subcontractor Agreement was in effect on January 22, 2011. Rather, the issue is whether the services rendered by Barretta prior to signing the specifications and the exhibit are "Services" under the agreement, and under the express language of the agreement, they are not. Finally, whether Barretta serviced the Target store on January 22, 2011 is not a material fact with respect to the contractual indemnification claim because any service Barretta performed that day does not fall under the agreement.

### B.  *Common Law Indemnification*

Barretta asserts that summary judgment should be granted in its favor with respect Target's common law indemnification claim because Barretta did not have exclusive control over the dangerous condition that gave rise to the slip and fall. In support of its assertion, Barretta points to the plaintiff's expert report, which states that "[t]he contributing factor to Ms. Hawkins fall was the presence of ice on the walkway surface. The manner in which the roof of the storage building is drained is a direct cause of the hazardous condition that Ms. Hawkins

9

encountered." (Mem. of Law in Supp., Ex. 2, Doc. No. 61-2, at 3.) The report also states that "[t]he manner in which the roof of the storage building is drained is a poor design . . . . The discharge from the pipe is subject to freezing and thawing . . . ." (Id. at 4.) Because Barretta was not responsible for the design of the roof drain and because the drain contributed to the slip and fall, Barretta asserts that it did not have exclusive control.

In Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694 (1997), the Connecticut Supreme Court, in the context of common law indemnification, answered in the negative the question of "whether the exercise of exclusive control over a sidewalk, by failing to remove its snow cover, can be equated to the exercise of exclusive control over the 'the situation,' that is to say over an accident caused by an unrelated party and occurring in the adjoining public roadway." Id. at 794. Here, the question is whether the exercise of exclusive control over ice removal on a walkway can be equated to the exercise of exclusive control over a slip and fall that occurred at the site for which Barretta was responsible for providing emergency snow removal services and was caused by ice forming over the walkway due to a poorly designed drain pipe.

It is undisputed that from January 18, 2011 through February 1, 2011, Barretta was responsible for scraping the

10

Target store down to blacktop and salting it, and during that period of time, the plaintiff slipped and fell on a frozen walkway at the Target store.  While Barretta might not have been responsible for the design of the drain pipe, a reasonable jury could conclude that despite the poorly designed drain pipe the dangerous condition that caused the slip and fall was the ice on the walkway, and that Barretta had exclusive control over that walkway.  Genuine issues of material fact exist as to what is the dangerous condition and whether Barretta had exclusive control over that condition.  Therefore, summary judgment is being denied with respect to the common law indemnification claim.

**IV. Conclusion**

Accordingly, the Motion for Summary Judgment (Doc. No. 60) is hereby GRANTED in part and DENIED in part.  Summary judgment shall enter in favor of Barretta Enterprises, LLC with respect to Target Corporation's contractual indemnification claim.

It is so ordered.

Signed this 10th day of February 2015, at Hartford, Connecticut.

                                                      /s/
                              Alvin W. Thompson
                    United States District Judge